FILED
U.S. DIST COURT
MIDDLE DIST. OF LA

2003 JAN 24 P 2: 51

SIGN
BY DEPUTY CLERK

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

SHAUN MASON

VERSUS

CF INDUSTRIES, INC.

CIVIL ACTION NO. 02-949

DIVISION "D" ; SECTION (3)

JUDGE BRADY

MAGISTRATE JUDGE DALBY

## STATEMENT OF UNCONTESTED MATERIAL FACTS

Defendant, CF Industries, Inc. (hereinafter "CF") submits the following statement of uncontested material facts in conjunction with its Motion for Summary Judgment:

1.  Plaintiff, Shaun Mason, was an employee of Basic Industries, Inc. (hereinafter "Basic") at all pertinent times. (*See* plaintiff's Complaint, ¶ III, attached hereto as Exhibit A.)

2.  Basic, plaintiff's employer, was performing maintenance work for CF on or about September 11, 2001, pursuant to a written contract (hereinafter the "1999 Contract"). (*See* 1999 Contract, attached hereto as Exhibit B; *see also* Affidavit of Karl Kastner, attached hereto as Exhibit C.)

3.  The 1999 Contract was signed by the vice president of Basic. (*See* 1999 Contract, p. 17, attached hereto as Exhibit B.)

4.  The 1999 Contract provides that the law of Louisiana is to be applied:

    > ... all matters relating to the validity, meaning, rights, obligations or performance of this Agreement shall be decided in accordance with the laws of the State of Louisiana.

    (*See* 1999 Contract, Section 33, attached hereto as Exhibit B.)

NO:99318426.1

JJB



| INITIALS | DOCKET# |
|----------|---------|
|          | 5       |

5.     Basic is identified as "CONTRACTOR" in the 1999 Contract. (*See* 1999 Contract,

attached hereto as Exhibit B.)

6.     The 1999 Contract also contains the following language:

> CONTRACTOR recognizes and agrees that a
> statutory employer relationship as envisioned by La.
> R.S. 23:1061(A), as amended by Act 315 of 1997,
> exists between the CONTRACTOR and CFII with
> respect to the Services to be provided by
> CONTRACTOR for CFII, as to CONTRACTOR'S
> direct employees and its statutory employees; and that
> the Services to be performed are an integral part of, or
> essential to, the ability of CFII to generate its own
> goods, products and/or services.

(*See* 1999 Contract, Section 3, attached hereto as Exhibit B.)

7.     The maintenance work being performed by Basic and plaintiff for CF at the time of

the incident in suit involved the removal of asbestos insulation and replacement with

non-asbestos insulation.    (*See* Affidavit of Karl Kastner, attached hereto as

Exhibit C).

8.     The maintenance work being performed by Basic and plaintiff at the time of the

incident in suit was necessary for CF to operate its manufacturing facility and

generate its products in a safe, efficient manner. (*See* Affidavit of Karl Kastner,

attached hereto as Exhibit C).

Respectfully submitted,

MARK C. DODART (#17549)
BETH E. ABRAMSON (#27350)
PHELPS DUNBAR LLP
Canal Place – 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
COUNSEL FOR CF INDUSTRIES, INC.

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been served on Patrick H. Hufft, 635 St. Charles Avenue, New Orleans, Louisiana 70130 by First Class United States Mail, properly addressed and postage prepaid, this 23rd day of January, 2003.

RECEIVED AND FILED
23RD JUDICIAL DISTRICT COURT FOR THE PARISH OF ASCENSION
CLERK OF COURT
STATE OF LOUISIANA
NO. 73323

Original signed by
June J. Larry
BY
DY-CLERK & RECORDER
ASCENSION PARISH LA.

DIVISION

# DIVISION A

VERSUS

CF INDUSTRIES, INC.

FILED: _____

                                                          _____
                                                          DEPUTY CLERK

## PETITION IN SUIT FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes plaintiff, Shawn Mason, who respectfully avers as follows:

I.

That at all times relevant herein, plaintiff Shawn Mason is a person of the full age of majority and resides in the Parish of Tangipahoa, State of Louisiana.

II.

Made defendant herein is CF Industries, Inc., who upon information and belief is a foreign corporation licensed to do and doing business in the State of Louisiana.

III.

That on or about September 11, 2001, petitioner was an employee of Basic Industries, Inc., working at the site of defendant, CF Industries, Inc., when he was caused to sustain serious and painful personal injuries to body and mind, by the fault and/or negligence of defendant, C F Industries, Inc., as set out more fully hereafter.

IV.

That defendant, C F Industries, Inc., at all times relevant herein, owned, operated and managed a chemical manufacturing facility in Ascension Parish, wherein the incident complained of occurred.

V.

That on the above date, at the said C F Industries, Inc. facility, a leak occurred, causing the release of toxic emissions.

VI.

EXHIBIT
A
PENGAD-Bayonne, N. J.

That plaintiff, Shaun Mason, was exposed to the toxic chemicals in the atmosphere and was caused to inhale the noxious fumes.

### VII.

These noxious chemicals and fumes included the chemical ammonia, and as a result of breathing these fumes, plaintiff, Shaun Mason, was severely injured, and required treatment, hospitalization, and other care in connection with his injuries, and he remains in need of medical care and treatment, and his injuries continue to cause him pain and suffering and disability.

### VIII.

That at all times relevant herein, defendant, C F Industries, Inc., was engaged in the handling of hazardous substances, and was reckless, and grossly negligent in such handling, causing the injuries to plaintiff herein.

### IX.

The negligence of defendant, C F Industries, Inc., includes the following:

(a)  Failing to properly inspect and maintain its facilities;

(b)  Permitting an unsafe condition to exist on the premises;

(c)  Failing to follow OSHA and other safety standards, regulations and practices, thereby causing the incident sued upon herein;

(d)  Failing to warn plaintiff of any such danger, and to bring him to a place of safety, prior to noxious fumes injuring him;

(e)  Handling hazardous substances in a grossly negligent fashion, and/or in such a way as to constitute an intentional tort, with notice and knowledge that injury was substantially certain to follow;

(f)  Such other acts of omission or commission as may be shown through discovery and/or trial of this matter.

### X.

That as a direct and proximate result of the negligence and/or fault of CF Industries, Inc., or the employees of same, petitioner was caused to suffer damages to his body and mind, has incurred medical expense, lost wages, and is entitled to past, present, and future general and special damages as may be allowed by law and proven at trial in such amounts as are reasonable in the premises.

WHEREFORE, petitioner prays that citation and petition be served on defendants herein, and that after all legal delays had herein, that there be Judgment in favor of Shaun Mason and against CF Industries, for such damages as are reasonable in the premises,

interest from the date of judicial demand, all costs of these proceedings, and all other

general and equitable relief.


Respectfully submitted,

**HUFFT & HUFFT, APLC**


PATRICK H. HUFFT, ESQUIRE (7633)
635 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 522-9413
Facsimile: (504) 586-9945
*Attorney for the plaintiff*


**PLEASE SERVE:**

C F INDUSTRIES, INC.
Through registered agent:
**C T CORPORATION SYSTEM**
8550 United Plaza Boulevard
Baton Rouge, Louisiana 70809


A TRUE COPY
Deputy Clerk & Recorder
ASCENSION PARISH 9/__/02

## CF INDUSTRIES, INC.
## INDEPENDENT CONTRACTOR
## AGREEMENT OF TERMS AND CONDITIONS

This CF INDUSTRIES, INC. INDEPENDENT CONTRACTOR AGREEMENT OF TERMS AND CONDITIONS (this "Agreement") is made and entered into as of the 6th day of September, 1999, by and between **CF INDUSTRIES, INC. ("CFII")**, a Delaware corporation, whose mailing address is declared to be P. O. Box 468, Highway 3089, Donaldsonville, LA 70346, and **BASIC INDUSTRIES, INC. ("CONTRACTOR")**, a Louisiana Corporation, whose mailing address is declared to be, 16055 Airline Highway, Baton Rouge, Louisiana 70817 who hereby agree as follows:

1. PERFORMANCE OF SERVICES

CFII may, from time to time, engage CONTRACTOR to perform services pursuant to a Service Agreement (a "Service Agreement"), purchase order (a "Purchase Order") issued to CONTRACTOR, or other authorization (provided that all services must be properly authorized by CFII). CONTRACTOR shall perform all such services in accordance with the terms and conditions of this Agreement. All services (collectively, the "Services") undertaken by or performed by or rendered by CONTRACTOR for CFII shall be rendered and performed and undertaken in accordance with the terms and conditions of this Agreement, irrespective of whether the Service Agreement or the Purchase Order or other authorization of work (including an oral authorization) specifically refers to this Agreement. For purposes of this Agreement, the term "Services" shall include providing labor, materials, supplies, equipment (including tools) and all other services performed by CONTRACTOR for CFII or on behalf of CFII, authorized by CFII. This Agreement replaces any previous Agreement of Terms and Conditions between the parties hereto with respect to Services performed or delivered after the date of this Agreement (described above).

2. REMUNERATION

CFII shall pay to CONTRACTOR the remuneration specified in the Service Agreement or the Purchase Order or other authorization for Services on a lump sum, cost plus or cost plus fixed fee basis as specified therein.

3. CONTRACTOR'S OBLIGATIONS

CONTRACTOR shall supply and direct or supervise all personnel required to properly perform the Services for CFII. All such personnel shall be employed by or shall be under contract to CONTRACTOR. Where used hereafter the term "Personnel" means the personnel of CONTRACTOR and of CONTRACTOR'S subcontractors assigned to the Services. Where used hereafter, the term "Premises" shall refer to CFII's Donaldsonville, Louisiana facility or any other location or facilities where CONTRACTOR is performing the Services. With regard to the Personnel and the performance of the Services, CONTRACTOR shall:

EXHIBIT

B

BR:200383.1

(a)     Ensure that the Personnel, while on the Premises, observe any rules and regulations of CFII with regard to the Premises including CFII Safety Rules (which CONTRACTOR shall request and obtain before performing Services) and all other safety rules addressed in any safety orientation by CFII or of which CONTRACTOR and/or the Personnel are advised while on the Premises, whether orally or in writing;

(b)     Submit to CFII (to the designated CFII representative) reports of work performed and hours spent by the Personnel performing the Services monthly or for each invoice if more often than monthly, regardless of whether CONTRACTOR is performing Services on a lump sum, hourly, or other basis; when required or requested. daily time sheets must be verified by the designated CFII representative;

(c)     Ensure that all Services are performed in a professional and workmanlike manner;

(d)     Ensure that all Services performed are lawful and do not infringe third-party patents or copyrights; and

(e)     Pursuant to OSHA, § 1910.119, provide CFII's Superintendent of Purchasing with the following information, in the form requested by CFII, pertaining to the preceding three (3) years: (i) average number of employees of CONTRACTOR; (ii) total hours worked by employees of CONTRACTOR during each calendar year; (iii) for each calendar year, sum of all work-related deaths and illnesses of CONTRACTOR'S employees and those injuries which resulted in loss of consciousness, restriction of work or motion, transfer to another job, or required medical treatment beyond first aid (iv) for each calendar year, the average number of injuries, illnesses, or lost workday cases per 100 full-time workers of CONTRACTOR, calculated as: number of incidents/exposure hours; (v) for each calendar year, cases which involved employee days away from work or days of restricted work activity, or both; (vi) for each calendar year, the number of workdays (consecutive or not) beyond the day of injury or onset of illness, employees were away from work or limited in work activity because of an occupational injury or illness not including days which the employee was not scheduled to work; (vii) for each calendar year, deaths of CONTRACTOR employees which are attributable to work-related injuries or illnesses, regardless of the length of time between the incident and death; (viii) Experience Modifier Rate (standard measure of safety performance based on insurance benefits and expenses which should be supplied by the insurance carrier); and (ix) such other safety and employee information as is requested by CFII. CONTRACTOR shall further provide to CFII, in writing, CONTRACTOR'S safety policy training program and drug testing procedures. CONTRACTOR shall update its

Case 3:02-cv-00949-DLD   Document 5   01/24/03   Page 8 of 25

information provided to CFII annually. All such data must be acceptable to CFII.

(f)     Ensure that at all times the Services are performed, all Personnel are legally authorized to perform compensated Services in the United States of America. including by having all necessary authorizations and permits required by law. including from the United States Immigration and Naturalization Service.

Nothing herein set forth shall relieve CONTRACTOR from its sole obligation to take all necessary and appropriate actions to ensure that all of the Personnel are competent and properly qualified to perform the work assigned to them.

CONTRACTOR recognizes and agrees that a statutory employer relationship as envisioned by La. R.S. 23:1061(A), as amended by Act 315 of 1997. exists between the CONTRACTOR and CFII with respect to the Services to be provided by CONTRACTOR for CFII, as to CONTRACTOR'S direct employees and its statutory employees; and that the Services to be performed are an integral part of, or essential to, the ability of CFII to generate its own goods, products and/or services.

4.     MATERIALS AND WORKMANSHIP

CONTRACTOR shall ensure that all materials, supplies or equipment so purchased conform to any sample and to any specifications, drawings or other descriptions furnished or approved by CFII or as specified by the original equipment manufacturer and are new (unless otherwise specified by CFII in writing), fit and sufficient for their intended purpose, are of merchantable quality, of good material and workmanship and are free from faults and defects. Without limitation, by providing goods or Services, CONTRACTOR hereby certifies that any goods, parts or products sold. leased or rented to CFII will be year 2000 compliant (its computer applications, imbedded microchips and other systems able to perform date-sensitive functions properly after December 31, 1999) without the need for CFII to pay or engage further services (by CONTRACTOR, third parties or CFII) beyond that authorized and contemplated in the applicable written authorization for Services (including, without limitation, a purchase order). CONTRACTOR shall diligently inspect for damage all materials, supplies or equipment purchased by others. CONTRACTOR shall bear the risk of loss with regard to all materials, supplies and equipment supplied by CONTRACTOR or its subcontractors until completion and final acceptance by CFII making the final payment for the applicable item of the Services.

5.     INSPECTION OF SITE

CONTRACTOR before starting work shall make a thorough inspection of the work site and its surroundings in order to be thoroughly familiar with all conditions relative to the Services. At the time of such inspection CONTRACTOR shall meet with CFII's representatives to review CFII's safety rules.

Case 3:02-cv-00949-DLD   Document 5   01/24/03   Page 9 of 25

6.  PROTECTION OF SERVICES

CONTRACTOR is responsible for the erection and maintenance of suitable barricades and all other things required to provide continuous protection of the work on the Services, CFII's property and adjacent property. CONTRACTOR shall take all necessary precautions for the safety of the Personnel and all other persons on the work site, and shall comply and cause the Personnel and others entering on the Premises in the performance of or in connection with the Services to comply with all of CFII's safety rules and with applicable provisions of Federal. State or local safety laws, rules or regulations necessary to prevent damage or injury to property or persons. CONTRACTOR shall require its subcontractors to cooperate with CFII, CONTRACTOR and the other subcontractors in order to avoid interruption in the performance of the Services, and to comply with OSHA, Federal, State or local laws, rules and regulations. CONTRACTOR shall make all Personnel available for a site specific safety orientation by CFII at the Premises prior to the performance of any Services, which orientation shall not exceed eight (8) hours. Additionally, all Personnel must have ABC-GBRIMA training cards and/or a recognized certified training card showing training in OSHA; Federal and State safety regulations; reflecting successful completion of such training programs. prior to entry on the Premises.

7.  PERMITS AND LICENSES

CONTRACTOR shall obtain all necessary permits and licenses in connection with the performance of the Services, and shall pay all municipal inspection and other fees pertaining to such permits and licenses. make all deposits and furnish, at its own expense, all bonds required by the proper authorities. Upon request of CFII, copies of all permits and licenses shall be delivered to CFII prior to commencing any such work, or as soon thereafter as practicable.

8.  DEFECTIVE WORK

CONTRACTOR at no expense to CFII shall, during the progress of the work, remove and re-execute any work that fails to conform with the requirements for the Services as determined by the authorized representative of CFII and shall remedy any defects due to faulty materials or workmanship which appear at any time up to one year from the date of completion of the Services; provided that if a longer or more comprehensive warranty is agreed to by CONTRACTOR, this paragraph shall not act to reduce the length or coverage of any such warranty, and further provided that the limitations set forth in this paragraph shall not reduce the warranties for materials, equipment (including tools) or other supplies. The provisions of this Section shall also apply to work done by subcontractors. CONTRACTOR shall procure from all suppliers and subcontractors, for CFII's benefit, available guarantees and warranties with respect to materials, supplies, equipment and labor furnished by CONTRACTOR for use and installation as part of the Services.

Case 3:02-cv-00949-DLD   Document 5   01/24/03   Page 10 of 25

9.   LOSS OR DAMAGE

CONTRACTOR is responsible for the safekeeping and protection of all work, materials. supplies and equipment until completion and final acceptance by CFII making the final payment for the applicable time of the Services.  CONTRACTOR shall repair or replace any work. materials, supplies or equipment damage or loss prior to such final acceptance no matter how the damage or loss was caused unless the cause is the sole negligence of CFII.  CFII may relieve CONTRACTOR of such responsibility, in which event the remuneration payable to CONTRACTOR for the Services shall be adjusted to reflect CFII's cost of repairing or replacing the damage or loss.  In the event CFII does so, CFII shall bear the risk of loss of, or damage to. the work. materials, supplies or equipment from all causes. except the acts and omissions of CONTRACTOR and the Personnel, as of the time that CFII takes over the performance of the repairs or replacement.  The term "materials. supplies and equipment" includes tools and other items whether supplied by CFII directly or purchased by CONTRACTOR or its subcontractors for CFII.  All materials. supplies. and equipment (including tools) purchased by or for CFII (as authorized) shall be the property of CFII.

10.  CONDITION OF WORK SITE

CONTRACTOR shall at all times keep the work site free from rubbish CONTRACTOR has generated due to CONTRACTOR'S work and upon completion shall thoroughly clean the work site of such debris.  All such debris shall be removed from the Premises and disposed of in accordance with applicable law.

11.  CHANGES AND EXTRAS

No extra services (beyond the Services) or change in the Services shall be valid unless approved in writing by CFII prior to the performance of the extra service or the change in the Services.

12.  WAIVER OF LIEN

CONTRACTOR waives on behalf of itself and its subcontractors all lien rights in connection with this Agreement, and the Services.  Neither CONTRACTOR nor any subcontractor or materialmen shall file any mechanic's lien or Private Works Act lien for the performance of Services or the furnishing of labor, materials or equipment on or for any property or improvements of CFII.  CONTRACTOR shall execute any documentation provided by CFII for the purpose of effectuating the provisions of this Section before any performance of the Services begins and shall ensure that its contract with its subcontractors and materialmen contain the above waiver.

13.  INSURANCE

CONTRACTOR shall carry and shall ensure that its subcontractors carry the insurance coverage of the types and with limits no less than the following:

BR:200383.1                                  - 5 -

✓(i) Comprehensive General Liability Insurance. Comprehensive public liability insurance against liability for personal injury (including bodily injury and death) and property damage. of not less than $5,000,000 per occurrence, such comprehensive public liability insurance to specifically include but not be limited to completed operations coverage, products liability, motor vehicle liability for all owned and non-owned vehicles, including rented and leased vehicles, and contractual liability coverage.

╱ (ii) Worker's Compensation and Employer's Liability Insurance. Worker's compensation and general liability insurance against loss. damage or injury to -employees, agents. representatives, invitees or guests of the CONTRACTOR or of any subcontractor and insurance against loss, damage or injury caused by any employees, agents, representatives. invitees or guests of the CONTRACTOR or of any subcontractor of CONTRACTOR in minimum amounts of $5,000,000 per occurrence.

╱ (iii) Professional Liability Insurance. If the Services include services insurable under professional liability coverages, professional liability insurance against loss, damage or injury resulting from errors and omissions by the CONTRACTOR and by employees, agents and representatives of the CONTRACTOR and of any subcontractor related to or arising out of the performance of Services by or on behalf of the CONTRACTOR in minimum amounts of $5,000,000 per occurrence.

√ (iv) Other Insurance. Builder's Risk Insurance. performance bonds, and such other insurance and in any such amounts as may from time to time be reasonably required by CFII against other insurable casualties which at the time are commonly insured against.

All such insurance shall be maintained with insurance carriers and under policies (including through umbrella policies) acceptable to CFII. including coverages for their respective employees performing the Services and any motor vehicles used by such employees in the course of their duties pursuant to this Agreement. Before any performance of Services begins, and thereafter updated such that CFII has always been provided with certificates reflecting current information, CONTRACTOR shall furnish CFII with a certificate(s) evidencing such coverages and containing a statement that the carrier(s) will furnish CFII with not less than thirty (30) days' advance notice of cancellation or material change. All such insurance shall be taken out and maintained in insurance companies acceptable to CFII. All insurance coverages shall provide that the minimum insurance coverages shall not be cancelled or changed until after thirty (30) days' written notice to CFII. At least 10 days prior to the expiration of any such policy, CONTRACTOR will cause to be furnished to CFII satisfactory evidence that such policy has been renewed or replaced by another policy or that there is not a necessity therefor hereunder.

If CONTRACTOR shall fail to effect and keep in force the insurance required under the terms of this Agreement, then and in any such case CFII may (but shall have no obligation to) effect and keep in force any such insurance and pay such premium or premiums as may be necessary for that purpose and from time to time deduct the

BR 200383.1                              - 6 -

amount so paid by CFII as aforesaid from any monies due or which may become due to CONTRACTOR, or recover same as a debt from CONTRACTOR.

The insurance companies shall have no recourse against CFII, or its subsidiaries or affiliated companies, for the payment of any premium, deductible. or for assessments under any mutual form of policy, and CONTRACTOR shall, as soon as practicable, furnish CFII with written confirmation from the insurance companies that they are aware of, and will abide by, this provision.

CFII shall be named as an additional insured under each policy of insurance evidencing the above described coverages and subrogation rights shall be waived against CFII thereunder. The fact that CFII is named as an additional assured shall not preclude CFII from making or asserting any claims under any such policy. Notwithstanding any "other insurance" clauses or provisions in any policy of insurance of CONTRACTOR or CFII, CONTRACTOR'S insurance policies shall be deemed to provide primary coverage among applicable insurance coverages. Any claims for loss or damages which are covered by the above-described insurance of CONTRACTOR shall be made against that insurance and not against CFII or against any other insurance carried by CFII. Each policy of insurance evidencing the above described coverages shall contain a severability of interest (or separation of insureds) and an innocent insured clause.

Failure to secure the insurance coverages or failure to comply fully with any of the insurance provisions of this Agreement and all Service Agreements, Purchase Orders and other written authorizations, or failure to secure such endorsements on the policies as may be necessary to carry out the terms and provisions of this Agreement and all Service Agreements, Purchase Orders and other written authorizations, shall in no way act to relieve CONTRACTOR from the obligations of this Agreement and any Service Agreement, Purchase Order and other written authorization, anything herein to the contrary notwithstanding. The insurance requirements hereunder are in addition to and do not replace or defeat the other obligations of this Agreement, including but not limited to those obligations set forth in Section 14, Indemnity, of this Agreement.

14.  INDEMNITY

Except if caused solely by the fault of CFII, CONTRACTOR assumes all responsibility and sole liability for any claims or actions based upon, or arising out of, injuries, including death, to persons, or damage to or destruction of property, sustained or alleged to have been sustained in connection with or arising out of, or incidental to, or in any way connected with, the performance of this Agreement and the Services by CONTRACTOR, its agents, employees, subcontractors, or its subcontractors' agents and employees, regardless of whether such claims or actions are founded upon the alleged negligence of CFII or its employees, agents, visitors or licensees, or their other fault, or their conduct or status which might subject them to strict liability under whatever theory. CONTRACTOR agrees to, and does hereby, indemnify and hold harmless CFII and its directors, officers, agents, servants and employees in respect of any such matters and agrees to defend any claim or suit or action brought against CFII or any person so indemnified and to pay all damages, losses, costs and expenses of every kind and description, including

Case 3:02-cv-00949-DLD   Document 5   01/24/03   Page 13 of 25

reasonable attorneys' fees incurred by CFII or any other person so indemnified, as a result of the claim or institution of any suit or action or the defense thereof, as well as any judgments or settlements therein or thereof.

The indemnity and defense obligations owed hereunder include, without limitation, the obligation of CONTRACTOR to indemnify CFII for any liability for workers' compensation benefits and medical expenses under the Louisiana Workers' Compensation Statutes, specifically including any penalties or fines for retaliatory discharge (whether a retaliatory discharge claim is deemed to arise under workers' compensation or general tort or contract law).

The indemnity and defense obligations owed hereunder are not to be diminished in any instance by the negligence of CFII (unless the sole fault of CFII) or any director, officer, employee, servant or agent of CFII, or other fault or strict liability of such person or entity.

Without limiting the preceding paragraphs. CONTRACTOR shall indemnify, defend and hold CFII, its directors, officers, employees. servants and agents harmless from all suits, fines, penalties, claims, losses, liabilities and expense, including reasonable attorney's fees, of every nature, in any manner arising out of, or incident to, or in connection with, the performance of this Agreement and the Services, attributable to patent or copyright infringement or to failure to comply with any applicable Federal, State or local laws, ordinances, rules or regulations.

Notwithstanding anything to the contrary contained in this Section 14 or otherwise in this Agreement, CONTRACTOR shall not be obligated to defend, indemnify or hold harmless CFII for that portion of damages or injuries resulting directly from the intentional negligent acts or gross negligence of CFII.

## 15.   RECORDS AND AUDIT

CONTRACTOR shall maintain and keep accurate books and records relating to the Services during the term of this Agreement and for two years thereafter. CFII or its representatives may audit such books and records from time to time and may take copies of the books and records. Any adjustments determined by such audit shall be made within 15 days after notice by the party requiring the adjustment.

## 16.   INDEPENDENT CONTRACTOR

CONTRACTOR acknowledges that it is an independent contractor and not in any respect an agent or employee of CFII. CONTRACTOR is not subject to the direction or control of CFII as to the manner in which it performs services pursuant to this Agreement and any Service Agreement or Purchase Order or other agreement and shall not represent to others that it is anything other than an independent contractor.

No personnel furnished by CONTRACTOR shall be deemed under any circumstances to be agents or servants of CFII. As an independent contractor, CONTRACTOR agrees to comply with all laws, rules, and regulations, Federal, State and local, which are now, or in

Case 3:02-cv-00949-DLD   Document 5   01/24/03   Page 14 of 25

the future may be, applicable to its business. equipment and employees engaged in or in any manner connected with CONTRACTOR'S performance hereunder. CONTRACTOR shall indemnify CFII against, and accept full responsibility for, the payment of all contributions or taxes for unemployment insurance or old age retirement benefits, pensions. annuities, wages or income taxes imposed by Federal, State or local governmental authorities with respect to all persons employed by or on the payroll of CONTRACTOR or performing any work on CONTRACTOR'S behalf with regard to the Services regardless of whether such contributions or taxes are measured by wages, salaries or other remuneration paid to such persons, the number of such persons or otherwise.

17. SUBCONTRACTORS; TERMINOLOGY

CFII acknowledges CONTRACTOR'S right to engage subcontractors from time to time as required in furtherance of the work performed and/or services rendered by CONTRACTOR under this Agreement and all Service Agreements, Purchase Orders or other agreements. Prior to the engagement of any subcontractor, CONTRACTOR shall furnish the name of the potential subcontractor to CFII together with a brief description of the nature of the work or the type of services which it is contemplated will be performed and/or furnished by such subcontractor. All subcontractors employed by CONTRACTOR shall be deemed independent contractors and not in any respect agents or employees of CFII, and CONTRACTOR shall be fully responsible for the acts, omissions and proper performance of its subcontractors. CONTRACTOR shall ensure that each subcontractor carry or is otherwise covered by insurance of the types and in the amount required by CFII and this Agreement as applicable to the work performed or services rendered by such subcontractor.

As used in this Agreement and in all Service Agreements, Purchase Orders and other agreements, the term "CONTRACTOR" shall always include any subcontractor of CONTRACTOR, and any specific reference herein to any subcontractor does not in any way diminish the inclusiveness of the term "CONTRACTOR". Similarly, the term "CFII" shall include CFII, its directors, officers, employees, servants and agents, and any enumeration of the parties comprising CFII does not in any way diminish the inclusiveness of the term "CFII".

18. HAZARDOUS MATERIALS

CONTRACTOR agrees that it will comply with all applicable laws pertaining to environmental matters (hereinafter sometimes collectively called "Applicable Environmental Laws"), including without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986 (as amended, hereinafter called "CERCLA"), and the Resource Conservation and Recovery Act of 1976, as amended by the Used Oil Recycling Act of 1980, the Solid Waste Disposal Act Amendments of 1980, and Hazardous and Solid Waste Amendments of 1984 (as amended, hereinafter called "RCRA"). CONTRACTOR warrants to CFII that no hazardous substances or solid waste will be located or disposed of on the Premises by CONTRACTOR. The term "hazardous

Case 3:02-cv-00949-DLD    Document 5    01/24/03    Page 15 of 25

substances" shall have the meaning specified in CERCLA. and the terms "solid waste" and "disposal" (or "disposed") shall have the meaning specified in RCRA; provided, in the event that the laws of the State of Louisiana or Federal laws establish a meaning for "hazardous substance", "solid waste", or "disposal" which is broader than that specified in either CERCLA or RCRA, such broader meaning shall apply.

CONTRACTOR hereby agrees to defend, indemnify and hold CFII and its directors, officers, agents. servants and employees harmless from and against any and all damages, claims. demands, causes of action, liabilities. losses, fines, costs and expenses (including, without limitation, cost of suit, reasonable attorneys' fees and fees of expert witnesses) arising from or in connection with any violation of the preceding paragraph.

19.   DRUG TESTING

CONTRACTOR tests all of its employees for drugs and controlled substances prior to initial hire by the CONTRACTOR.

Additionally, CONTRACTOR requires its employees to submit to such tests for alcohol, drugs and controlled substances, in the following circumstances:

(i) following any serious or potentially serious accident or injury, regardless of fault;

(ii) whenever an employee is suspected of using illegal drugs or alcohol;

CONTRACTOR does not permit an employee who refuses to consent to a proposed examination to perform services for CFII. CONTRACTOR complies with all applicable requirements of law in obtaining consents, performing tests, disclosing results and otherwise in the performance of testing pursuant hereto.

CONTRACTOR has a qualified laboratory do all testing on specimens provided to determine if alcohol. drugs or controlled substances are present. Initial positive drug screens are confirmed through required and acceptable confirmation testing.

CFII strictly prohibits any person with any detectable amount of drugs or controlled substances present in his or her body (other than prescription drugs not adversely affecting such employees' ability to perform his/her work in a safe and effective manner), or under the influence of alcohol, from being on the Premises or other work sites of CFII.

20.   USE OF EQUIPMENT IN PREMISES

Before using any tools, machinery or other equipment (collectively, "Equipment") in the Premises in any manner, whether owned by CONTRACTOR or by third parties (including but not limited to CFII), CONTRACTOR shall thoroughly inspect the Equipment. CONTRACTOR warrants to CFII that it shall not allow use of the Equipment unless the Equipment is free of faults and defects and can be safely operated and/or used and is appropriate for the use intended by CONTRACTOR. CONTRACTOR warrants that its

Case 3:02-cv-00949-DLD   Document 5   01/24/03   Page 16 of 25

Personnel have been instructed in and fully understand the safe operation of any Equipment and agrees to observe all safety precautions. CONTRACTOR agrees to use and operate all Equipment in a careful and proper manner and CONTRACTOR shall comply with all national, State, municipal, and other laws, ordinances and regulations in any way relating to the possession, use, or maintenance of the Equipment. CONTRACTOR agrees to defend, indemnify and hold CFII and CFII's directors, officers, employees and agents harmless from and against any damage and/or injuries which arise, in whole or in part, from use of or possession of the Equipment, regardless of whether such injuries or damage results from: (i) defects in the Equipment (whether or not CFII was or should have been aware of such defects), or (ii) improper maintenance or repair of said Equipment (whether by CFII or by others), or (iii) a design defect (whether or not CFII could have influenced such design), or (iv) a failure to warn of hazards associated with such Equipment (whether or not CFII possessed knowledge or information, including operating instructions or other materials, warning of hazards associated with operation of such Equipment or the intentional or accidental removal of warning information or signs or decals by CFII or others), or (v) any other cause, whether or not resulting from the fault or other breach of responsibility of, CFII, including, without limitation, any combination of the foregoing. It is the intention of the parties hereto that CONTRACTOR shall assume and shall defend, indemnify and hold harmless CFII and CFII's directors, officers, employees and agents from all liabilities in any manner arising from the use or possession of Equipment by CONTRACTOR, regardless of the source of such Equipment. Borrower agrees to replace or to pay the owner of such Equipment, on return of Equipment not owned by CONTRACTOR, for all charges incidental to breakages, shortages, or damages, ordinary wear and tear excepted, to the Equipment during the CONTRACTOR'S use or possession thereof.

21. NON-DISCRIMINATION

In connection with the performance of work and the rendition of Services under this Agreement and all Service Agreements, Purchase Orders and other agreements, CONTRACTOR agrees to comply fully with all of the provisions of the Civil Rights Act of July 2, 1964, as amended, and with the provisions of Paragraphs 1 through 7 of Section 202 of Executive Order No. 11246 of September 24, 1965, as amended.

22. CONFIDENTIALITY

CONTRACTOR shall ensure that all data and information supplied to CONTRACTOR or its subcontractors in connection with the performance of the Services is kept in strict confidence. Such information shall not be disclosed to anyone outside the organizations of CFII or CONTRACTOR, except to persons authorized by CFII or as required by law, nor to any officer or employee of CONTRACTOR other than officers or employees directly engaged in the rendition of the Services for whom access to the information is necessary. CONTRACTOR may disclose such information to its subcontractors on a need-to-know basis provided that each such subcontractor has executed a Non-Disclosure Agreement in a form acceptable to CFII.

Case 3:02-cv-00949-DLD    Document 5    01/24/03    Page 17 of 25

23.  RETURN OF DOCUMENTS

Upon termination of this Agreement or upon request by CFII, CONTRACTOR shall promptly deliver to CFII all data, notes. formulas, forms, plans, drawings, specifications, procedures and other materials and all copies of such materials relating in any way to CFII's business or to the Services rendered during the term of the Agreement which are in CONTRACTOR'S possession or under its control or in the possession or under the control of any of its subcontractors. Such material does not include financial information relating to payments for the Services.

24.  DISPENSARY AND MEDICAL SERVICES

CONTRACTOR may ask CFII to furnish medical treatment to the Personnel in case of injury or illness while on the Premises. CFII will attempt to provide such treatment within reasonable scope of its dispensary facilities, if any, and may make reasonable charges for such services. CONTRACTOR shall indemnify and hold harmless CFII from any claim that might arise against CFII and/or its directors, officers, employees or agents, by reason of the use of CFII's medical services by the Personnel unless caused by CFII's sole negligence.

25.  MATERIAL SAFETY DATA SHEETS

CONTRACTOR shall ensure that a Material Safety Data Sheet is delivered to CFII's Safety Supervisor for each substance and shall obtain the authorization of such Safety Supervisor prior to any substance being brought on the Premises, whether by CONTRACTOR, its subcontractors or suppliers; such authorization by CFII shall not relieve the CONTRACTOR from full liability for such substance being on the Premises.

26.  LAWS, RULES AND REGULATIONS

CONTRACTOR shall comply and shall cause the Personnel, its subcontractors, suppliers, materialmen and other persons entering on the Premises in the performance of, or in connection with, the Services, to comply with all applicable laws, ordinances, rules and regulations pertaining to the performance of the Services and with CFII's rules and regulations. CONTRACTOR warrants that upon completion of the Services it will have complied with all such laws, ordinances, rules and regulations.

27.  ASSIGNMENT

The rights and liabilities of the parties shall be binding upon, and inure to the benefit of, their respective successors and assigns. Neither party may assign the benefit of this Agreement or related agreements without the prior written consent of the other party other than to a controlled subsidiary or affiliate of the assigning party.

Case 3:02-cv-00949-DLD  Document 5  01/24/03  Page 18 of 25

28. TERMINATION

CFII may terminate the performance of all services for CFII without notice if performance is not undertaken and completed:

(a) within the term specified in the Service Agreement, Purchase Order or other agreement, or

(b) if no time is presented, then within a reasonable time after the authorization of the Services.

In addition, CFII may otherwise terminate the performance of all services for CFII if CONTRACTOR fails to cure a breach of the terms and conditions of this Agreement within thirty (30) days of notice from CFII specifying the breach, or if the Services are not otherwise being performed in accordance with the plans, specifications and drawings or the other terms and conditions of this Agreement or the applicable agreement or documentation.

In addition, CFII may otherwise terminate the performance of Services by CONTRACTOR in its sole discretion (notwithstanding a Service Agreement, Purchase Order. or other agreement contemplating full performance) and shall only be obligated to pay CONTRACTOR for Services performed or expenses incurred (only expenses incurred consistent with the terms of CONTRACTOR'S performance of Services) prior to such termination.

29. MARINE TERMS AND CONDITIONS

In addition to all other provisions of this Agreement, in the event the Services undertaken by or performed by or rendered by CONTRACTOR for CFII include Services on CFII's marine terminal facilities and/or any other marine related Services (collectively "Marine Work"), CONTRACTOR warrants that such Services are of the same type as CONTRACTOR customarily performs in the normal and usual course of its business activity and agrees to the following additional terms:

(a) Insurance coverages required of the CONTRACTOR shall, in addition to all insurance coverages required pursuant to Section 13 of this Agreement, include the following:

(1) Federal Employer's Liability Act and Worker's Compensation Act voluntary compensation coverage in statutory amounts and in compliance with the laws of all jurisdictions in which any of the work is to be performed appropriately endorsed to include coverage for and under the United States Longshore and Harbor Workers' Compensation Act and its extension under the Outer Continental Shelf Lands Act.

(2) With respect to each vessel owned, non-owned, chartered, or otherwise, utilized by CONTRACTOR in connection with the performance of the

BR:200383.1

- 13 -

Services under this Agreement, marine liability insurance, including but not limited to Protection and Indemnity. Collision Liability, Towers Liability, Third-Party Bodily Injury and Property Damage, Pollution Liability, including coverage for liabilities under the Oil Pollution Act of 1990, and Maritime Employers Liability, insuring against liability for injury to or death of persons and damage to or loss of property and appropriately endorsed to include coverage for and under the Jones Act, the Death on the High Seas Act. and General Maritime Law, including wages, transportation, maintenance and cure, In Rem endorsement, and borrowed servant doctrine endorsement, Protection and Indemnity to include coverage for voluntarily locating, marking, removing, recovering and raising vessels and cargoes. Such insurance shall be in the minimum amount stated in the Service Agreement, Purchase Order or other written authorization. Hull and Machinery Insurance shall be carried in a minimum of the amount of the actual cash value of vessel. Charterer's and/or Owner's Limitation Clauses shall be deleted with respect to CFII. Maritime Employer's Liability coverage shall include an endorsement which allows voluntary compensation on statutory terms and conditions to a consent claimant regardless of the fact that the claimant's activities may have been outside the scope of statutory coverage.

Such insurance shall be in addition to other insurance as required by Section 13 of this Agreement and shall be issued by such insurer's and include such coverages and include such additional terms as are required of other coverages in accordance with Section 13 of this Agreement.

The insurance companies providing such insurance shall have no recourse against CFII. or its subsidiaries or affiliated companies, for the payment of any premium, deductible, or for assessments under any mutual form of policy, and CONTRACTOR shall, as soon as practicable, furnish CFII with written confirmation from the insurance companies that they are aware of, and will abide by, this provision.

CFII shall be named as an additional assured under each policy of insurance evidencing the above described coverages and subrogation rights shall be waived against CFII thereunder. The fact that CFII is named as an additional assured shall not preclude CFII from making or asserting any claims under any such policy. Notwithstanding any "other insurance" clauses or provisions in any policy of insurance of CONTRACTOR or CFII, CONTRACTOR'S insurance policies shall be deemed to provide primary coverage among applicable insurance coverages. Any claims for loss or damages which are covered by the above-described insurance of CONTRACTOR shall be made against that insurance and not against CFII or against any other insurance carried by CFII.

Failure to secure the insurance coverages or failure to comply fully with any of the insurance provisions of this Agreement and all Service Agreements, Purchase Orders and other written authorizations, or failure to secure such endorsements

Case 3:02-cv-00949-DLD    Document 5    01/24/03    Page 20 of 25

on the policies as may be necessary to carry out the terms and provisions of this Agreement and all Service Agreements, Purchase Orders and other written authorizations. shall in no way act to relieve CONTRACTOR from the obligations of this Agreement and any Service Agreement, Purchase Order and other written authorization, anything herein to the contrary notwithstanding. The insurance requirements of this Agreement are in addition to and do not replace or defeat the other obligations of this Agreement, including but not limited to those obligations set forth in Section 14. Indemnity, of this Agreement.

(b)    CONTRACTOR shall not load vessels (including barges) to a draft greater than prudent navigation requires, considering current and anticipated tidal changes.

(c)    In addition to its agreement to comply with Section 18 of this Agreement and without limitation. CONTRACTOR will comply with Federal Water Pollution Control Act, as amended.

(d)    All matters relating to the validity, meaning, rights, obligations and performance of Marine Work under this Agreement shall be decided in accordance with General Maritime Law of the United States and where silent, by the laws of the State of Louisiana.

(e)    Any vessel utilized by the CONTRACTOR in performing Services shall be properly equipped and in every respect seaworthy and in good running order and in every way fit and ready for CONTRACTOR'S use, so far as the exercise of due diligence can make her. CONTRACTOR shall maintain in full force and effect on any such vessel utilized by CONTRACTOR any required United States Coast Guard documents and Inspection Certificates, together with any other documents required of the vessel. CFII is entitled to revoke any Services in the event any materials, services, and equipment are not delivered by CONTRACTOR'S promised ship, delivery, installation or performance date.

(f)    Except to the extent otherwise specifically stated in any Service Agreement or Purchase Order or other written authorization for Services, the identified remuneration for Services hereunder utilizing a vessel provided by CONTRACTOR shall include all expenses associated with the performances of Services, including, but without limitation, all fuel, oil and greases, waste oil disposal, liquid bulk tank cleaning, tow lines, cordage, chains, binders, dunnage, replacement bulk hoses and replacement wire rope for the vessel utilized, port charges and other docking fees. Wharfage, dockage and safe births shall be provided by the CONTRACTOR without additional expense to CFII.

(g)    The operation, navigation and management of any vessel used in the performance of the Services shall be under the exclusive control and command of the CONTRACTOR.

(h)    The indemnity and defense obligations imposed by this Agreement shall, in addition to all other terms of Section 14 and all other terms of this Agreement and

Case 3:02-cv-00949-DLD   Document 5   01/24/03   Page 21 of 25

any Service Agreement. Purchase Order or other written authorization. further include, without limitation. the obligation of the CONTRACTOR to indemnify, defend and hold harmless CFII for any claims or actions in any manner relating to or arising from the seaworthiness of any vessel utilized by the CONTRACTOR and from any claims in any manner associated with any vessel which the CONTRACTOR owns. operates, charters and/or controls in any way utilized in the performance of the Services, regardless of the fault or strict liability of CFII contributing thereto.

30.   NOTICES AND REQUESTS

Any notice or approval required or permitted to be given under the terms of this Agreement shall be sufficient if in writing, and if sent by registered or certified mail to the address for the notified party set out above. Either party may change its address from time to time by notice to the other party. All consents shall be in writing. All requests or approvals by CFII shall be sufficient if made by CFII's designated representative from time to time. CFII's designated representative will be the Superintendent of Purchasing or the person he designates located at the Premises.

31.   CONFLICT

Should the parties hereto enter into a Service Agreement or Purchase Order or any other written contract (excluding work orders, job tickets or similar documents issued by CFII) which is specifically prepared for a particular job to be done or service to be rendered by CONTRACTOR, then, in the event of a conflict between the terms of such Service Agreement, Purchase Order or contract and the terms of this Agreement, the terms of the Service Agreement, Purchase Order or specific special contract for the particular job or service shall prevail.

32.   AUTHORITY OF EXECUTING PARTIES

Each of the persons executing this Agreement represents and warrants that he or she has full right and authority to execute this instrument on behalf of CFII or CONTRACTOR, as the case may be. and to legally bind such party to the fulfillment of all of the provisions hereof.

33.   GOVERNING LAW

Except as set forth in Section 29(d), all matters relating to the validity, meaning, rights, obligations or performance of this Agreement shall be decided in accordance with the laws of the State of Louisiana.

34.   SAVINGS CLAUSE

If any section or part thereof contained in this Agreement is declared invalid by any court of competent jurisdiction, such decree shall not affect the remainder of the section or any other section and each shall remain in full force and effect.

Case 3:02-cv-00949-DLD   Document 5   01/24/03   Page 22 of 25

34. SAVINGS CLAUSE

If any section or part thereof contained in this Agreement is declared invalid by any court of competent jurisdiction, such decree shall not affect the remainder of the section or any other section and each shall remain in full force and effect.

35. WAIVER OF BREACH

CFII's waiver of a breach of any provision of this Agreement or any agreement for services by CONTRACTOR shall not operate or be construed as a waiver of any subsequent breach.

36. ENTIRE AGREEMENT

This Agreement, and its accompanying documents contain the entire Agreement of the parties. It may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

37. TIME

Time is of the essence in the performance of this Agreement.

This Agreement shall remain in full force and effect as written until terminated by mutual agreement of the parties hereto. Unless otherwise indicated under such a written termination instrument, this Agreement shall continue in force (notwithstanding such a termination) and shall govern all Services undertaken, rendered or performed prior to such termination.

THUS DONE AND SIGNED in the presence of the undersigned witnesses after full reading of the whole.

WITNESSES:

CF INDUSTRIES, INC.

BY: _____
Name: Robert J. Baldwin
Title: Assistant Purchasing Supervisor
Date: October 25, 1999

CONTRACTOR:

BY: _____
Name: Scott F. McLean
Title: Vice President
Date: October 28, 1999

BR:200383.1 MS

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

SHAUN MASON                                CIVIL ACTION NO. 02-949

VERSUS                                     DIVISION "D" ; SECTION (3)

CF INDUSTRIES, INC.                        JUDGE BRADY

                                           MAGISTRATE JUDGE DALBY

## AFFIDAVIT OF KARL KASTNER

STATE OF LOUISIANA

PARISH OF ASCENSION

     BEFORE ME, the undersigned authority, personally came and appeared:

## KARL KASTNER

who, after being duly sworn, did depose and state the following:

    1.    I am a natural person of majority age, competent to testify to the matters stated herein and execute this affidavit based on personal knowledge.

    2.    I am employed by CF Industries, Inc. (hereinafter "CF") in the capacity of Maintenance Manager at CF's facility in Donaldsonville, Louisiana.

    3.    I am familiar with the operations which were being conducted at CF's Donaldsonville facility in September 2001, including maintenance work being performed for CF by contractors in Ammonia Plant Number 2 (a part of CF's Donaldsonville facility) on or about September 11, 2001.

    4.    Basic Industries, Inc. (hereinafter "Basic") was one of the contractors performing maintenance work in Ammonia Plant Number 2 on or about September 11, 2001.

EXHIBIT

C

PENGAD-Bayonne, N. J.

NO:99326655.1                        Page 1 of 2

5.     The maintenance work being performed by Basic on or about September 11, 2001, at CF's Donaldsonville facility, Ammonia Plant Number 2, was being performed by Basic in accordance with and pursuant to the provisions of a written contract (hereinafter the "1999 Contract"), a copy of which has been attached hereto as Exhibit B.

6.     The maintenance work being performed by Basic on or about September 11, 2001 was in progress at the time of the accidental release of ammonia at CF's Donaldsonville facility which is the subject of this lawsuit.

7.     The maintenance work being performed by Basic and particularly by plaintiff, Shaun Mason, at the time of the incident in suit involved the removal of asbestos insulation and replacement with non-asbestos insulation in Ammonia Plant Number 2.

8.     The said work being performed by Basic and plaintiff at the time of the incident in suit was necessary to maintain and improve the ability of CF to operate its manufacturing facility and generate its products in a safe, efficient manner.

9.     The foregoing is true and correct to the best of my personal knowledge, information and belief, and I would so testify in a court of law.

_Karl Kastner_
_____
**KARL KASTNER**

SWORN TO AND SUBSCRIBED
BEFORE ME, THIS 13th DAY
OF JANUARY, 2003.

_Brenda G. Jackson_
NOTARY PUBLIC

NO·99326655.1

Page 2 of 2